JOHNSTON v. MANHATTAN FIRE & MARINE INSURANCE CO.

1. Insurance—Proofs of Loss—Time Limit—Disavowal of Liability—Estoppel.

Insurer under fire insurance policy could not avoid liability because of failure of plaintiffs to file a sworn proof of loss within the time limit prescribed in the policy for doing so where its adjuster had immediate and full knowledge of all the facts, such negotiations were carried on between the parties over an extended period as would naturally lead insureds and their attorney to believe that strict compliance as to the time limit would not be required, insurer avoided denying liability within such time limit, and it may reasonably be inferred that the conduct of the insurer and its agent was for the purpose of bringing about a condition in consequence of which it might disavow liability.

2. Same—Proof of Loss—Waiver.

An insurer under a fire insurance policy may waive its right to have proof of loss furnished within the time limited by the policy by acts and conduct manifesting an intent and purpose not to claim advantage or by failing to act, so as to induce a belief that it was the intention to waive.

3. Same—Unconditional and Sole Ownership—Knowledge of Insurer's Agent.

Insurer under fire insurance policy, containing clause that it would not be liable for loss or damage "if the interest of the

insured be other than unconditional and sole ownership when loss or damage occurs,'' could not escape liability when insured's interest was in fact that of vendee under a land contract whereas the policy indicated he was a mortgagor where the trial court found that insurer's agent had knowledge of the true state of the title but failed to prepare the policy accordingly and the error was not discovered in short interval between issuance of policy and loss by fire.

4. SAME—KNOWLEDGE OF AGENT—PREPARATION OF FIRE INSURANCE POLICY.

A fire insurance company should be held to have all the knowledge possessed by its agent who prepares its policies.

5. APPEAL AND ERROR—FINDING OF COURT—CONFLICTING TESTIMONY —CREDIBILITY OF WITNESSES.

Finding of trial court, sitting without a jury, as to amount of loss sustained by insured under fire insurance policy is not disturbed where the testimony was conflicting, since he saw and heard the various witnesses.

6. INSURANCE—FIRE POLICIES—DIVISION OF LOSS.

Insured who sustained loss of building by fire to extent of $3,100 which was insured in two companies, one of which paid $2,000 in settlement of claim against it, was entitled to collect only the remaining $1,100 for loss of building and $500 for loss of contents from defendant insurer whose policy limits were $1,500 on building and $500 on contents rather than have loss on building prorated.

7. COSTS—SLIGHT REDUCTION OF JUDGMENT.

Costs are allowed insured in action on fire insurance policy notwithstanding slight reduction of judgment on appeal where insurer contested any liability throughout the litigation.

Appeal from Alcona; Dehnke (Herman), J. Submitted June 4, 1940. (Docket No. 19, Calendar No. 41,032.) Decided September 6, 1940.

Assumpsit by Horace Johnston and wife against Manhattan Fire & Marine Insurance Company, a New York corporation, on a fire insurance policy. Judgment for plaintiff. Defendant appeals. Modified and affirmed.

*William R. Barber,* for plaintiffs.

*Alfred F. Myer* (*D. E. McLaughlin,* of counsel), for defendant.

North, J. This is an action on a fire insurance policy. Plaintiffs, Horace and Edith Johnston, were contract purchasers from plaintiff Olaf Olson of a parcel of land in Alcona county on which the Johnstons had commenced but had not completed the erection of a two-story dwelling. Defendant's local agent on August 29, 1938, issued a standard form fire insurance policy, effective for one year from date, in the amount of $1,500 on the building and $500 on the contents. The insurance ran to Horace Johnston as the sole and unconditional owner subject to a mortgage interest held by plaintiff, Olaf Olson. At the time this policy was issued plaintiffs had another fire insurance policy in the Northern Insurance Company in the amount of $2,000 on the building and $500 on the contents.

The building and its contents were destroyed by fire September 13, 1938. It is admitted that the loss on the contents was in excess of $1,000; but the value of the building is in dispute. Plaintiffs received in settlement from the Northern Insurance Company the full face value of its policy, and thereafter they brought suit on defendant's policy. On trial before the court without a jury, plaintiffs had judgment for $1,828.57. Defendant has appealed.

On October 18, 1938, plaintiffs' attorney wrote defendant advising it of the fire loss and requesting blank forms for proof of loss. To this letter, defendant, on October 28, 1938, replied that the matter had been turned over to the Underwriters Adjusting Company. On the last-mentioned date, or the day following, Mr. McParlan, the adjuster for the

Underwriters Adjusting Company and who had also been the adjuster in the settlement of the Northern Insurance Company's policy, contacted Mr. and Mrs. Johnston at or near Saginaw, Michigan. Mr. McParlan requested Mr. and Mrs. Johnston to have their attorney come to see him at Saginaw. The Johnstons promptly advised their attorney, who was located some distance from Saginaw, of the requested interview at the latter place. October 31, 1938, the attorney wrote Mr. McParlan and in part said:

"It will be impractical for me to be in Saginaw, and it seems a useless expense besides. If you should be up this way I would be glad to talk this matter over with you. But it seems the only thing to do is to send us your check for $1,994. I will be pleased to hear from you, however, regarding this matter."

On October 29, 1938, defendant's local agent at defendant's direction wrote plaintiffs asking for the payment of the premium on the policy and advising them that defendant had informed him "the policy must be picked up for cancellation as soon as settlement is made." The premium was paid November 18, 1938. All of the above negotiations or interviews took place prior to November 12th, the expiration of the 60 days within which the policy required proof of loss to be filed. November 17, 1938, defendant's local agent wrote plaintiffs' attorney: "It is customary for the Insurance Company to send the check to the agent and require him to take up the policy at the time he delivers the check. Accordingly I will be pleased to notify you whenever I get a check for Mr. Johnston." The fair inference from this letter written just after the expiration of the 60 days within which proof

of loss should have been made is that notwithstanding proofs had not been filed defendant was still contemplating payment.

Mr. McParlan had not replied to the letter of plaintiffs' attorney of October 31st, and on December 6th the attorney again wrote Mr. McParlan, explaining that defendant's local agent had assured him a check in settlement of the claim would be forthcoming and inquiring when he could expect receipt of same. Mr. McParlan did not reply to this letter. On January 14, 1939, plaintiffs' attorney prepared a proof of loss which was mailed direct to the defendant company. This proof of loss was turned over by defendant to Mr. McParlan who, on January 24, 1939, wrote the attorney he (McParlan) rejected the purported proof of loss. Later the attorney interviewed Mr. McParlan at Saginaw at which time the latter voiced his suspicions as to the justness of the claim. On February 10, 1939, suit on the policy was commenced by Horace Johnston, and during the trial the other plaintiffs were added.

In the trial court and on this appeal defendant has contended plaintiffs are not entitled to recover for the reasons hereinafter considered.

I. The fire insurance policy contained the following clause: ''The insured shall give immediate notice in writing, to this company, of any loss or damage, * * * and, the insured shall, within 60 days after the fire, unless such time is extended in writing by this company, render to this company a proof of loss, signed and sworn to by the insured.'' Appellant does not stress in its brief plaintiffs' failure to give ''immediate notice'' of the loss. Perhaps this is due to the fact the same agent acted as adjuster for defendant company and also for the other company carrying insurance on this prop-

erty; and unquestionably this adjuster did have immediate notice of the loss and promptly paid in full the policy carried in the other company. But appellant does contend that plaintiffs' failure to file sworn proof of loss within 60 days after the fire constitutes a bar to recovery in this suit. We think the trial judge was right in holding that the testimony discloses such a course of negotiations between these parties continuing over an extended period, and after defendant and its adjuster had full knowledge of all the facts, as naturally led plaintiffs to believe defendant did not intend to require strict compliance with the provision of the policy as to sworn proof of loss. To say the least, the defendant and its representative were very diplomatic in avoiding a statement of its denial of liability until after the 60-day time limit in the policy had expired. It is a reasonably fair inference from this record that this course of conduct on the part of defendant and its agent was pursued for the purpose of bringing about a condition in consequence of which the insurer might disavow liability. And it was this course of conduct that obviously led plaintiffs and their attorney to permit expiration of the 60 days without filing sworn proof of loss. It is worthy of note it was within this limited period that defendant's local agent requested payment of the premium on defendant's policy, and it was but very shortly after the expiration of the 60-day period that the agent wrote plaintiffs' attorney: "It is customary for the Insurance Company to send the check (in payment of loss) to the agent and require him to take up the policy at the time he delivers the check. Accordingly I will be pleased to notify you whenever I get a check for Mr. Johnston." To allow defendant to urge as a defense

plaintiffs' belated service of sworn proof of loss, under the circumstances in this case, would constitute a fraud upon plaintiffs. As we have previously held, the insurer may waive its right to have proof of loss furnished within the time limited "by acts and conduct manifesting an intent and purpose not to claim the supposed advantage, or by so neglecting and failing to act as to induce a belief that it was the intention and purpose to waive." *Struble* v. *National Liberty Ins. Co.*, 252 Mich. 566.

II. Defendant also urges nonliability on the ground the policy provided that unless there was an agreement in writing to the contrary it should not be liable for loss or damage: "If the interest of the insured be other than unconditional and sole ownership when loss or damage occurs." In the instant case Mr. Johnston was named in the policy as insured and sole owner, and Olaf Olson was named as mortgagee. Obviously this was the mistake of defendant's agent who prepared the policy and the error was not discovered during the short interval which intervened between the time the policy was issued and the loss. But the undisputed testimony shows, and the circuit judge found, that at the time defendant's agent prepared this policy he was fully advised that Mr. and Mrs. Johnston were contract vendees and that Olaf Olson was the vendor. Since the agent at the time of writing the insurance had this knowledge, he should have prepared the policy accordingly. We have held in previous cases wherein the insurer's agent had knowledge of the true state of the title of the property, the insurance company "should be held to have all the knowledge possessed by its agent." *Schaefer* v. *East & West Ins. Co.*, 260 Mich. 220. See, also, *Miotke* v. *Milwaukee Mechanics' Ins. Co.*, 113 Mich. 166. Under the facts of the instant case the defendant cannot

sustain its contention of nonliability on the ground just above noted.

III. Appellant's remaining contention is that the judgment in the circuit court for $1,828.57 is not sustained by competent testimony. This result was reached on the basis of the circuit judge's finding that the loss of the insured building amounted to $3,100. It was pointed out by the circuit judge that the testimony on this phase of the case was unsatisfactory; but he considered it with care and arrived at the noted result. On this record we are disinclined to disturb his finding, since he saw and heard the various witnesses and since there was conflict in the testimony given.

As previously noted the property was insured in another company. In adjustment that company paid for loss of the building $2,000. The balance of $1,100 should be paid by defendant to plaintiffs for loss of the building. There is no controversy about the Johnstons' loss of contents of the building being very much in excess of $1,000; and hence the $500 insurance on contents of building provided in defendant's policy should be paid in full. The result is a total liability of $1,600. As above noted, the amount of the judgment in the circuit court was somewhat in excess of $1,600. This resulted from an attempt on the part of the circuit judge to prorate the loss between the two insurance companies, but without making allowance for the total amount already paid by one of these companies. We think recovery should be limited to the amount above stated. Notwithstanding there is a slight reduction in the amount of judgment rendered in the circuit court, since defendant throughout the litigation has contested any liability whatever, costs will be allowed to appellees on this appeal. The case will be re-

manded to the circuit court for entry of judgment in accordance herewith.

BUSHNELL, C. J., and SHARPE, CHANDLER, MCALLISTER, WIEST, and BUTZEL, JJ., concurred. The late Justice POTTER took no part in this decision.